# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1641

_____

Michael Prezioso

*Plaintiff - Appellant*

v.

The Prudential Insurance Company of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 17, 2013
Filed: April 4, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Michael Prezioso brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claiming that The Prudential Insurance Company of America ("Prudential") wrongly denied him long term disability ("LTD") benefits under a group policy sponsored by his former employer,

Vertis, Inc. ("Vertis").  Prezioso appeals the district court's[1] grant of summary judgment dismissing this claim.  He argues that the court erred in applying the abuse of discretion standard of judicial review and, alternatively, that Prudential abused its discretion in denying LTD benefits.  Reviewing these issues *de novo*, we affirm.

## I.  Factual and Procedural Background.

The allegedly disabling injury occurred on May 10, 2010, when Prezioso injured his back lifting a 15-pound art portfolio while working as an advertising sales representative for Vertis, a marketing and advertising firm.[2]  On May 11, Dr. John Dowdle diagnosed acute mechanical low back pain and degenerative disc disease of the lumbar spine.  Dr. Dowdle recommended a week off work and pain medication, noting that Prezioso should be "dramatically better when he is seen in 1 week."  Prezioso faxed this information to Vertis human resources.  Later that day, Prezioso was terminated by his supervisor for failing to meet sales targets established after Vertis lost one of Prezioso's major accounts in 2009.

When the pain did not quickly resolve, Dr. Dowdle ordered an MRI of Prezioso's lumbar spine.  The images revealed degenerative disc disease at two levels of his lumbar spine and stenosis, a narrowing of spaces at the L4-L5 level impinging on the nerve.  On June 1, Dr. Dowdle referred Prezioso to an exercise program at a neck and back clinic.  Dr. Katherine Anglin observed that Prezioso "move[d] fairly easily about the room," had a normal gait but a limited range of motion, and reported

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]In May 2009, Prezioso sustained a similar injury to his lumbar spine while removing a box of work materials from a car trunk.  He was treated with steroid injections and returned to work at Vertis within a few weeks.  Prior to these injuries, he had a lumbar laminectomy and disc excision to treat a ruptured disc in 1981.

significant pain. Dr. Anglin estimated that, if the exercise program were successful, Prezioso would return to his normal activities in nine to twelve weeks.

Prezioso participated in the exercise program but made little progress. In mid-June, Dr. Dowdle considered spinal surgery. After a July discogram showed "abnormal disc morphology" at L4-L5 and L5-S1, Dr. Dowdle referred Prezioso to orthopedic surgeon Stefano Sinicropi for a second opinion. When a CT scan confirmed Dr. Sinicropi's preliminary opinion, he recommended two-level lumbar spinal fusion in October 2010 and eventually performed that surgery on June 24, 2011. Meanwhile, a motor vehicle accident in October aggravated Prezioso's lumbar pain and injured the cervical area of his spine. Dr. Dowdle, Dr. Sinicropi, and a physician's assistant signed numerous "Workability Forms" stating, without analysis, that Prezioso was unable to work between May 10, 2010, and August 1, 2011.

On November 11, 2010, Prezioso applied for LTD and short term disability ("STD") benefits under Vertis's separate LTD and STD plans administered by Prudential. He submitted an employee statement, attending physician statements, and medical records supporting his claim. Both plans defined disabled to mean that a participant is "unable to perform the material and substantial duties" of his "regular occupation" due to sickness or injury. "Material and substantial duties" are those that are "normally required for the performance of the [employee's] regular occupation, and cannot be omitted or modified." "Regular occupation" means the employee's "occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." To be eligible for STD benefits (not here at issue), an employee must be "continuously disabled" throughout a seven-day "elimination period." To be eligible for LTD benefits, an employee must be continuously disabled throughout a 180-day elimination period.

On January 18, 2011, Prudential disallowed Prezioso's STD claim, concluding he was ineligible for benefits because the injury occurred on May 12, the day after he

was terminated. The decision advised that, if Prezioso chose to appeal, his LTD claim would be considered after STD benefits were approved. On March 18, Prezioso timely appealed both denials. His appeal clarified that the May 10 injury occurred prior to his May 11 termination. In addition, he submitted voluminous medical records and a personal affidavit declaring: "I am unable to work at any job due to . . . severe pain which causes me to be unable to sit, stand, walk, or drive for any period of time. I have been advised by my doctors to avoid lifting even light weight items. Both the pain and the pain medications which I need to take cause me to have difficulty thinking and concentrating."

In considering this appeal, Prudential had Prezioso's claim reviewed by an independent physician board-certified in pain management and rehabilitation, Dr. Ephraim Brenman. Dr. Brenman's April 22, 2011, report noted that Prezioso had restrictions and limitations from his back condition and found that he should not lift or carry items heavier than 25 pounds; only occasionally squat or reach below waist level; and sit for no longer than two hours at one time with five-minute breaks to stretch. Due to the automobile accident, Dr. Brenman also found that Prezioso should be limited to two hours of continuous keyboarding separated by five minute breaks. Despite these limitations, Dr. Brenman concluded that Prezioso "can perform the work activities and duties within the restrictions and limitations on a full time basis." Dr. Brenman concluded that Prezioso had reported limitations "not supported and consistent with the documentation provided for review," and that "no functional examination findings . . . support ongoing neurological deficit." Prudential also consulted a certified rehabilitation counselor, Irene Morris, to identify the "material and substantial duties" of Prezioso's regular occupation. Morris concluded that these duties included lifting and carrying up to twenty pounds occasionally and up to ten pounds frequently. She found that advertising executives often work more than forty hours per week, but "most have the freedom to determine their own schedules."

Prudential denied Prezioso's LTD and STD appeals on June 15, 2011. Citing Dr. Brenman's report and medical records provided by Prezioso, Prudential agreed that Prezioso "did experience a level of functional impairment" following his back injury in May 2010. However, based on Morris's analysis and Dr. Brenman's findings, Prudential concluded that Prezioso's impairments would not prevent him from performing the material and substantial duties of his regular occupation. Consistent with the LTD Plan's Summary Plan Description ("SPD"), Prudential advised that Prezioso could elect to appeal this decision to Prudential's Appeals Review Unit; that a second appeal must be submitted within 180 days; that Prudential would determine the second appeal within 45 days unless it notified Prezioso that "special circumstances" required a 45 day extension; and that he may immediately file a lawsuit under ERISA because he had "completed the first level of appeal."

On December 8, 2011, Prezioso submitted a voluntary second appeal. He objected to Dr. Brenman's report because Dr. Brenman "is not a neurologist" qualified "to opine on neurological disorders" and submitted a statement from Dr. Sinicropi disagreeing with Dr. Brenman's conclusions. Prezioso provided an updated medical history including records related to his June 24 lumbar fusion surgery. He also submitted a vocational report opining that he was incapable of performing his job due to a 10-pound lifting restriction; affidavits regarding his limited daily activities and debilitating pain; and a June 27 Social Security Administration decision that he has been under a disability as defined in the Social Security Act since May 10, 2010.

In response to this second voluntary appeal, Prudential sought an independent medical review from a board-certified neurologist and asked Dr. Brenman to re-evaluate his findings in light of the recent fusion surgery and Social Security ruling. The neurologist, Dr. Leonid Topper, found no evidence in Prezioso's medical records that he was affected by any specific neurological diagnosis. Therefore, Dr. Topper found that Prezioso's reported limitations were "not supported . . . from a neurological point of view." Dr. Brenman reviewed documents relating to Prezioso's

-5-

spinal fusion surgery and concluded that his earlier opinion was still sound. Both physicians explained why the Social Security award did not change their opinions.

Prudential did not complete its investigation of Prezioso's second appeal within 45 days. On January 20, 2012, Prudential gave notice it required the 45-day extension contemplated in the SPD. On March 7, Prudential requested a further extension, which Prezioso's attorney refused to grant. Prudential advised that it would nonetheless continue to review the second appeal. Prezioso filed this action on April 27. Prudential completed its review and issued a final decision denying the second appeal on June 7, 2012. On October 31, a magistrate judge granted Prezioso's motion to exclude documents generated after the filing of his lawsuit as not properly part of "the ERISA administrative record." On February 28, 2013, the district court granted summary judgment to Prudential, concluding that Prudential did not abuse its discretion in deciding that Prezioso was not continuously disabled within the meaning of the LTD policy and therefore not entitled to LTD benefits.

## II. The ERISA Standard of Judicial Review.

A "denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). As the Supreme Court recently noted -

> *Firestone* deference[,] . . . by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based. Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about

-6-

unexpected and inaccurate plan interpretations that might result from *de novo* judicial review.

Conkright v. Frommert, 559 U.S. 506, 517 (2010). Thus, although we require "explicit discretion-granting language" in an ERISA plan contained in a group health and welfare insurance policy, the policy need not use the word "discretion." Hankins v. Standard Ins. Co., 677 F.3d 830, 835 (8th Cir. 2012).

**A.** Prezioso first argues that the district court erred in applying the abuse of discretion standard because the plan did not include discretion-conferring language. Reviewing this issue *de novo*, see Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002), we first note that it was not properly preserved for appeal. In the district court, Prezioso moved to exclude documents generated after he filed this lawsuit as not properly part of the ERISA administrative record. Resolution of that issue very much depended on whether judicial review of Prudential's decision would be conducted under the abuse of discretion or the *de novo* standard of review. Compare, e.g., Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993) ("[i]f it is necessary for adequate *de novo* review of the fiduciary's decision, the district court may allow the parties to present [additional] evidence"), with Bounds v. Bell Atl. Enter. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994). In response, Prudential advised that "the sole issue is whether Prudential abused its discretion when, based on the evidence in the administrative record, it denied Plaintiff's claim for disability benefits." In his Reply memorandum, Prezioso did not challenge this description of the applicable standard of review, thus either conceding the issue or leading the trial court into error in granting the motion to exclude.

Turning to the merits of this issue out of an abundance of caution, we find it is governed by controlling Eighth Circuit precedent. The LTD plan expressly provided that, in considering a claim for LTD benefits, Prudential "may request . . . proof of continuing disability, satisfactory to Prudential." Another provision stated

that benefits, if granted, will cease on the date "you fail to submit proof of continuing disability satisfactory to Prudential." In Ferrari, we held that a plan requiring that the employee submit "written proof of continued total disability . . . satisfactory to [the plan administrator]" was sufficient to trigger abuse of discretion review. 278 F.3d at 806; accord Clapp v. Citibank N.A. Disability Plan (501), 262 F.3d 820, 823, 826-27 (8th Cir. 2001). Prezioso urges us to instead follow contrary decisions of other circuits. See Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 166-68 & n.3 (4th Cir. 2012), and cases cited. As a panel, we may not do so. In any event, we find the reasoning in those decisions unpersuasive.

Prezioso further argues that this case should be governed by our decisions noting that ambiguous language in an insurance policy does not confer discretion. See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 629 (8th Cir. 2007), citing Walke v. Group Long Term Disability Ins., 256 F.3d 835, 840 (8th Cir. 2001). But, contrary to this contention, the phrasing in Prudential's LTD plan -- "satisfactory to Prudential" -- eliminated the ambiguity that prompted our decision in Walke. See 256 F.3d at 839-40. Moreover, there is far more in this case than the above-quoted policy provisions. As the district court noted, the LTD plan's SPD clearly explained to plan participants that Prudential "has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits," and that Prudential's decisions as claims administrator "shall not be overturned unless arbitrary and capricious." Prezioso argues the district court erred in relying on the SPD, citing cases holding that discretion-conferring language found only in the SPD is ineffective because "there would . . . be little need to follow formal [ERISA plan] amendment procedures if key terms could be changed by a summary plan description." Ringwald v. Prudential Ins. Co. of Am., 609 F.3d 946, 949 (8th Cir. 2010) (quotation omitted). But this principle does not apply if the plan has language conferring discretion that is ambiguous, rather than absent altogether. To disregard SPD language *clarifying* a plan's arguably ambiguous grant of discretion would be contrary to Department of Labor regulations *requiring* that SPDs

clearly describe "all claims procedures." 29 C.F.R. § 2560.503-1(b)(2), cross-referencing § 2520.102-3. The district court correctly concluded that the plan language as confirmed by the SPD explicitly granted Prudential discretion to interpret the plan and to determine eligibility for benefits.

**B.** Prezioso further argues that, even if the plan granted Prudential discretion, he is nonetheless entitled to *de novo* review because, when a plan administrator fails to act on a claimant's appeal that "raises serious doubts about the administrator's [initial] decision," the initial decision "is subject to judicial review, and the standard of review will be de novo." Seman v. FMC Corp. Ret. Plan for Hourly Emps., 334 F.3d 728, 733 (8th Cir. 2003). We reject this contention because it misconstrues the applicable ERISA statute and regulations.

The statute provides that every plan must provide participants with adequate notice of claim denials and "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Claimants "must exhaust this procedure before bringing claims for wrongful denial to court." Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001). Implementing § 1133(2), the Department of Labor's regulations provide that every plan must establish a procedure "under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1).[3] For group health plan disability claims, the plan must notify the claimant of its determination of the mandatory appeal within 45 days, subject to one 45-day extension for "special circumstances." § 2560.503-1(i)(1), (3)(i). If the plan fails to follow this procedure, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan" and may seek judicial review.

---

[3]The LTD plan's SPD incorporated the substance of 29 C.F.R. § 2560.503-1(h), providing that the first mandatory appeal will be a "full review of the information in the claim file and any new information submitted to support the appeal."

§ 2560.503-1(l). That was the circumstance in <u>Seman</u>, where the plan denied the claimant full and fair review by failing to decide his mandatory appeal for more than 18 months. 334 F.3d at 731.[4] We had no administrative appeal decision to review, and the claimant, having exhausted his plan remedies, was entitled to judicial review of the adverse initial decision. Thus, we saw no alternative but to conduct that review *de novo*. We explicitly noted the district court's discretion to base this *de novo* review "on evidence beyond that presented to the administrator." <u>Id.</u> at 734.

This case is far different because Prudential conducted a full and fair review of Prezioso's mandatory appeal and issued a timely decision. At that point, his plan remedies were exhausted. The regulations allow for a voluntary second appeal but expressly provide that the claimant need not exhaust this procedure before seeking judicial review. 29 C.F.R. § 2560.503-1(c)(3). The regulations do not provide that a voluntary appeal procedure is part of the plan's statutory obligation to provide "full and fair review" of the initial decision. See <u>DaCosta v. Prudential Ins. Co. of Am.</u>, No. 10-CV-720 (JS)(ARL), 2010 WL 4722393, at *4-5 (E.D.N.Y Nov. 12, 2010). Thus, when Prezioso filed his voluntary second appeal in December 2011, his right to seek judicial review of the adverse determination of his mandatory appeal under the abuse-of-discretion standard of review was established. In these circumstances, we agree with the Eleventh Circuit that Prudential's subsequent handling of the voluntary appeal did not change the standard of review. See <u>Harvey v. Standard Ins. Co.</u>, 503 F. App'x 845, 848-49 (11th Cir. 2013) (per curiam) (unpublished). Of course, in a particular case, how the plan administrator responded to a claimant's voluntary second appeal may "be weighed as a factor in determining whether there is an abuse of discretion." <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 115 (2008), quoting <u>Bruch</u>, 489 U.S. at 115.

---

[4]Likewise, <u>McGarrah v. Hartford Life Ins. Co.</u>, 234 F.3d 1026, 1031 (8th Cir. 2000), involved a plan administrator's failure to provide the written decision required by 29 C.F.R. § 2560.503-1(h)(3).

Determining that the abuse-of-discretion standard of review applies when a voluntary second appeal was available, but either was not pursued by the claimant or was not completed by the plan administrator, does not resolve an important, related question -- in such a case, what is the ERISA administrative record to be reviewed? In some cases, if the claimant elects to sue without waiting for the plan's response to a voluntary appeal, it may be proper to limit the administrative record to the record before the plan administrator when the prior, mandatory appeal was decided, as in Harvey, 503 F. App'x at 849. But in other cases, such as this case, determining the proper record to be reviewed for abuse of the plan administrator's discretion may require careful examination of the claim's complete procedural history. One thing seems clear: neither the statute, the regulations, nor any persuasive judicial authority warranted the magistrate judge's decision to keep the record open until Prezioso filed his lawsuit, thus including his additional supporting materials but not Prudential's final response to those materials, without a finding that Prudential's delay was unreasonable and prejudicial, or that the litigation would otherwise be unreasonably prolonged. Fortunately, the district court's careful review of the arbitrarily truncated administrative record under the abuse-of-discretion standard of review made this initial procedural error harmless.

## III. Abuse of Discretion Review.

The remaining question is whether Prudential abused its discretion in denying Prezioso LTD benefits. Under this standard, "the plan administrator's decision will be upheld if it was reasonable, that is, if it was supported by substantial evidence." McGarrah, 234 F.3d at 1031. We must affirm "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Ferrari, 278 F.3d at 807 (quotation omitted; emphasis in original).

-11-

The record demonstrates that Prudential provided Prezioso the required "full and fair review" before denying his first appeal from the initial denial of LTD benefits. It considered all comments, medical records, and other information submitted by Prezioso; did not afford deference to the initial decision; referred the appeal to a different decisionmaker; consulted a neutral health care professional with appropriate training and experience in lower back disabilities; and obtained advice from a qualified vocational expert regarding the demands of Prezioso's "regular occupation." See 29 C.F.R. § 2560.503-1(h)(2) and (3). Contrary to Prezioso's assertions, Prudential did not abuse its discretion by according more weight to the opinions of its own experts -- Dr. Brenman and Irene Morris -- than to the opinions of his treating physicians and other experts. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); Dillard's Inc v. Liberty Life Assurance Co. of Bos., 456 F.3d 894, 899-900 (8th Cir. 2006). The key question presented to Prudential -- whether Prezioso was able to perform the material and substantial duties of his regular occupation -- was not meaningfully addressed by his medical records or by the opinions of Drs. Dowdle and Sinicropi, who submitted conclusory workability forms covering the 180-day elimination period and the succeeding months prior to Prezioso's lumbar surgery, a period when he did not have a job and there is no evidence he was looking for work. By contrast, Prudential's experts analyzed Prezioso's medical records and job responsibilities, concluded that he "experienced a level of functional impairment" that did not meet the definition of "continuously disabled" in the LTD plan, and further concluded that his subjective complaints of continuously disabling pain were not supported by the objective medical evidence. Based on this record, Prudential did not abuse its discretion in denying Prezioso's first appeal from the adverse initial decision.

Turning to the abbreviated record of Prezioso's voluntary second appeal, the district court noted that he submitted a large volume of documents, but "the majority of these documents provided little or no new information for Prudential to consider."

-12-

Prezioso's criticism of Dr. Brenman's lack of expertise in neurology prompted Prudential to request an independent neurological review by Dr. Topper, who concluded that Prezioso's claim was not supported "from a neurological point of view." The Social Security decision was new, but "an ERISA plan administrator or fiduciary generally is not bound by an SSA determination that a plan participant is disabled." Farfalla v. Mutual of Omaha Ins. Co., 324 F.3d 971, 975 (8th Cir.) (quotation omitted), cert. denied, 540 U.S. 875 (2003). Drs. Brenman and Topper explained to Prudential why they disagreed with the Social Security decision. The lumbar surgery was a newly-completed event. Prudential asked Dr. Brenman to reconsider his earlier conclusions in light of the new evidence. After reviewing records of the surgery and Prezioso's subsequent recovery, Dr. Brenman concluded that Prezioso would have been unable to work for 30 days after the surgery, would have been limited to sedentary work for the next three months, and then would have again been able to work with the restrictions noted in Dr. Brenman's initial report. We agree with the district court that the subsequent medical evidence submitted with Prezioso's voluntary second appeal did not render Prudential's denial of his mandatory first appeal an abuse of discretion. Particularly in a case like this involving a claim of total disability based primarily on the claimant's subjective complaints of pain, "[w]here there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled." Clapp, 262 F.3d at 829 (quotation omitted).

For the foregoing reasons, the judgment of the district court is affirmed. We deny Prezioso's motion to strike Prudential's separate appendix and Prudential's motion for leave to file a Sur-Reply Brief.

_____